v. Lewis Rice, 5-14-0594. And before we hear argument, I want to state for the record that the other justice involved in the case is Justice Cates. She's not able to be here today. She will have the arguments available to her online to listen to as they are being recorded. She will also have the benefit of the department's briefs and the record. And she is a fully participated member of the panel. So counsel, for your comment, you may proceed. My name is Maggie Heim and I'll be arguing on behalf of Mr. Lewis Rice. This is an appeal from a second stage dismissal of a post-conviction petition. Now, this case first began late at night at Mr. Rice's home. He sat in his truck in the driveway with his friend, Ms. Woods, while his nephew, Mr. Chalmers, was in the doorway of the house. Three men, Mr. Jones, Mr. Estes, and Mr. Appleton, pulled up in a red Cadillac and parked in a way that blocked his truck in. Mr. Estes and Mr. Appleton got out of their car with a gun. Mr. Rice grew uncomfortable, called his nephew to the car, and they were required to drive over the curb in order to get away with Mr. Estes shooting at them as they left. Now, after this confrontation, Mr. Rice drove home and the state presented evidence that while he was home, he got a gun. Mr. Rice also called the police and then left in order to drive his nephew and Ms. Woods home. And there was a second confrontation, which is the subject of this conviction. As Mr. Rice was driving home with his nephew and Ms. Woods, they saw a car and they slowed down, and it was the same red Cadillac. Testimony differed on which car blinked their lights, which was a way of signaling the other car to stop. Both Mr. Jones and Mr. Rice had guns in their laps. Both cars shot at one another. Mr. Tralmer saw his uncle got out and heard shooting but didn't see who shot first, and the occupants of the other car testified that Mr. Rice shot first. In the trial, the state's theory was that Mr. Rice went home after the first confrontation to get a gun in order to go looking for them to retaliate. The defense theory was that Mr. Rice was driving his nephew and Ms. Woods home and that he shot out of a belief in his need for self-defense, even if that belief was unreasonable. Mr. Rice was ultimately convicted of armed violence and first-degree murder, and on direct appeal, this court found that there was sufficient evidence for the first-degree charge. Now, Mr. Rice filed a pro se petition, which alleged that defense counsel had been ineffective for failing to prepare and use specific evidence to support self-defense, among other things. Now, specific to this appeal, he faulted defense counsel for failing to contact and interview Ms. Woods, who was an occurrence witness, and Ms. Andrews, who saw Mr. Rice and his truck before and after each confrontation. As support, Mr. Rice included an affidavit from Ms. Andrews and a police statement from Ms. Woods, as well as some envelopes with her address. Now, post-conviction counsel was appointed and filed an amended petition, and in the amended petition, counsel included the claim that counsel was ineffective for failing to interview, subpoena, and call Ms. Woods and Ms. Andrews. Counsel asserted in the amended petition that these witnesses would corroborate that Mr. Rice had his gun before he stopped at home after the first confrontation, and that this would have undercut the state's theory that he had left his house specifically seeking retaliation after going home to get a gun. Now, the problem with the amended petition is that an ineffective assistance claim based on the failure to investigate or call a witness requires an affidavit from the witness in question. And the issue that we've raised in this case is whether post-conviction counsel could have provided reasonable assistance as required by the statute in Rule 651C, where the amended petition included less support for the claim than the pro se petition. Indeed, the amended petition would be unlikely to make it past a first-stage hearing. Now, the post-conviction counsel made two statements somewhere in the record which explained why there might not be affidavits. And in the petition itself, you have counsel stating that affidavits weren't necessary due to the nature of the points raised. And then you have at the hearing counsel arguing that there needs to be an evidentiary hearing to flesh out off-record support for the claim that trial counsel was ineffective. But the problem is that the nature of the claim and the exploration of off-record support are things that needed to happen to some extent during the second stage in order to even progress to a third-stage evidentiary hearing. It's also notable that Mr. Rice did include Ms. Andrews' affidavit, which included the facts about the gun that were specifically included in the amended petition. It also affirmed that there were bullet holes inside the cab of Mr. Rice's truck, which Detective Perry did not document. It affirmed that Mr. Rice had his gun with him all night. And finally, it alleged that trial counsel would not return her calls. Now, with this one affidavit, the pro se petition had a better chance of succeeding past the second stage than the amended petition. Now, in this case, there was a Rule 61c certificate filed, and these certificates raise a rebuttable presumption that there has been reasonable assistance. However, the certificate can be rebutted by the record where counsel's statements or actions indicate that he didn't realize what was required at the second stage, and in that way, perhaps didn't comply with the rule. And that's what we have in this case. It appears that counsel was mistaken in believing that it was enough at this stage to allege that there were off-record facts that needed to be developed in an evidentiary hearing. But the reality is that this petition could not proceed without an affidavit from either Ms. Woods or Ms. Andrews. That's black-letter law from the Supreme Court in Enos, and the petition could only be weakened by detaching what support it had included at the pro se stage. And it cannot be reasonable for an attorney to amend a petition when the amendments specifically guarantee that that petition will not be able to go forward. But to a certain extent, the state speculates that counsel may have believed that the underlying petition was without merit, and that's why there weren't further amendments made to this issue of whether or not to call witnesses. But this doesn't absolve counsel of his duty to, under Rule 61c, and indeed the Supreme Court has made clear, even when you believe you're representing a meritless petition, you must comply with the rule. And the Court has further laid out the process which should be followed when you believe you're representing a meritless petition. And this process makes sure that the attorney's ethical duties are respected, as well as the petitioner's due process rights. The attorney has counseled that they should withdraw, while showing that they have indeed complied with the rule. But that's not the process that was followed in this case. And nowhere do we have the Supreme Court indicating that it's appropriate to continue presenting a claim to the hearing court, while at the same time making amendments that undermine your client's claims. Rather than speculate, this Court can resolve this case based on the record that is presented, which is that you have a pro se petition putting forward this claim of ineffectiveness, based on the failure to investigate and present these witnesses. You have at least one affidavit supporting one of the facts which counsel put into the amended petition. But then you have an amended petition that reframes and keeps that claim, but takes away all of the supporting documentation, with the only explanation being that they weren't needed due to the points raised, and they weren't needed because off-record evidence could be developed at the evidentiary hearing. In such a situation, any certificate of compliance has been rebutted. Where counsel's petition wouldn't have made it past a first-stage review, we're asking that this Court remand to ensure that Mr. Rice receives reasonable assistance before concluding proceedings on what is his first post-conviction petition. Are there any questions? Counsel, did you state your name for the record? My name is Maggie Heim. I represent the Office of the State Appellate Defender. May it please the Court. Counsel. My name is Sharon Shanahan, and I represent the people of the State of Illinois. This is not a case dealing with ineffective assistance of counsel. This is a case dealing with reasonable assistance of counsel by post-conviction attorney. Now, as our Supreme Court has recently noted, that because trial counsel and post-conviction counsel serve different roles, and because a post-conviction petitioner has already been stripped of the presumption of innocence, and because the right to post-conviction counsel is not constitutionally required, the reasonable level of assistance required under the Act is less than Strickland. On the other hand, it goes on to say that you can use Strickland as kind of a general guide, and of course we all know that Strickland has two parts, whether the assistance was reasonable and whether there was prejudice. Now, the State posits that under Cato, which is the Supreme Court case that I just cited, since we apply a general framework of Strickland only with an even lower standard, then if the record reflects that even if you take everything the defendant says as true, then the defendant was not prejudiced by what post-convictional counsel did, then there is no unreasonable assistance of counsel. Just as there would be no unreasonable, there would be no ineffective assistance of counsel if a trial attorney did something wrong and there's no prejudice. There should be no unreasonable assistance if there is no prejudice. Now, counsel cites Suarez for a proposition that doesn't matter, we're not even going to reach the claim. But in Suarez, counsel never even filed a 651C. And in this case, boy did this guy file a 651C. I mean, he said, I met with him seven times and I called him ten times, and so this case is very different than Suarez. I'm sorry that it slips my mind at the moment, but there is an appellate court case cited by a defendant in his reply brief which says that you don't have to, that you don't reach, you don't deal with prejudice. And that's exactly what it says. But I think it's, first of all, an appellate court case. Second of all, it's relying on Suarez in a situation that Suarez was not directed to. And third, and I think most importantly, it conflicts with COCO, which says that reasonable assistance in a post-conviction petition is like Strickland, only with an even lower standard. So I think the question before this court is, if it was wrong for post-conviction counsel not to attach any affidavits, did it hurt anything? Now, first of all, Ms. Woods, before the trial, during the trial, nobody ever could find this woman. The state was looking for her. The state had her on their witness list from the very beginning and never had an address any more than East St. Louis. Defense counsel put Ms. Woods on her list of witnesses. She did, and she said her address was listed as 5418 North Park Drive, East St. Louis. But then it said, current whereabouts unknown. So trial counsel clearly was trying to find Ms. Woods. She couldn't find Ms. Woods. The state couldn't find Ms. Woods. And I think that under People v. Wallace, this court has to presume that post-conviction counsel made a concerted effort to find Ms. Woods and was unsuccessful. So I think that's reason number one why Ms. Woods' affidavit is not in there. But I think an even more important reason is that Ms. Woods would be a horrible witness for a defendant. She was using cocaine in question. She remembered the shooting at Natalie Street, the first shooting, which, by the way, the thing about the bullets in the defense truck, defense counsel just said shots were fired at that truck before it even left the house. So who cares whether there's bullets in it after the second attack. But Ms. Woods, this is from her interview with the police, the facts that I'm stating, which are all contained in the record. She remembered the first shooting. She lay down and, as I said, she had been using cocaine. She lay down in the back seat of the truck and dozed off. She jumped up when the gunshots started only to see the defendant firing at the red Cadillac. And when she was asked if anyone in the red car fired at the defendant, Ms. Woods said, to be honest, I don't know. And so there's a real good reason that even if she had been, if post-conviction, if trial counsel had found her, she wouldn't have used her. And if post-conviction counsel had found her and heard what she had to say, you would not want an affidavit from her. And that all is contingent upon finding a woman that no one's been able to find for years. And as far as Ms. Williams, defendant's wife at that time, Woods was his girlfriend, Williams was his wife, she said that she and the defendant got in bed. The defendant was cutting and packaging cocaine. When he received the call, he put his dope in his pocket and he grabbed his gun and he left. Now, defendant's big self-defense claim was, oh, you know, I wanted to get the bad guy drug dealers out of the area. This used to be a drug house and I don't want it to be a drug house anymore. So that's why I didn't like these guys. And so the last thing in the world he wants is someone coming in and saying that he's cutting dope when he gets the call, and then he puts his dope and his gun in his pocket and he leaves. So when it comes down to it, her affidavit just shows that the defendant's a drug dealer, just like the victims in this case. But whether or not the defendant had a gun with him to begin with, or whether he got one in between the first shooting and the second shooting, it is a factor that might indicate that he was angry. But when you look at all the other things that happened, his nephew testified that he drove to another house and got the gun. His nephew testified that the defendant is the one that flagged down the other car. And his nephew, I believe, is the one that said that the defendant had a gun in his lap and said, I'm going to kill those motherfuckers. And he was mad and he was dead serious. That's the testimony. He continued to cruise the streets for about a half an hour, allegedly to take his nephew and girlfriend home, but when he spotted the Cadillac on Lynch Street, a half an hour later, he was only a few blocks from the original shooting. And then he confirms with his nephew, is that the Cadillac? And even when he sees the Cadillac, he doesn't take any action that anybody that feared for their life would take. He said, he stopped, he got out of the car, he said, you all shot me. Did you shoot at me? I will kill you all. And at that point, according to his nephew, according to Mr. Estes, who is the only person inside the Cadillac to survive unharmed, according to Grady Appleton, whom the defendant left in a coma for two months, and according to Ms. Woods, the defendant got out of the truck and fired into the red Cadillac even though no one in the Cadillac fired back. So if you're looking at prejudice, if you're looking at why these affidavits didn't, the lack of affidavits didn't hurt anything, then there's no doubt that these affidavits could, failure to have the affidavits could not prejudice the defendant. And we believe under the ruling in Cato that this court can look at prejudice and it should affirm. Thank you, counsel. Ms. Bly? So there are a few factual matters that have come up. And I think in the brief, in the reply brief, we go through that I think there's a lot of unknowns about whether Ms. Woods was in fact a missing witness. And in the pro se petition you have Mr. Rice including envelopes that show he was in continued contact with her. So I think there is a real fairness there. about whether or not counsel ever looked into her. And the current record does not rebut the idea that she wasn't looked for because two of the men who did eventually testify at trial were missing at points during the lead up to trial. The record indicates that there were 25 letters to the defendant by post-conviction counsel. Is there anything in those letters about trying to locate the witnesses? Between post-conviction counsel and the petitioner? Yes. I don't know. I only know what's in the certificate. But one of the things that I think we do know from the certificate is that counsel affirmed that he made all necessary amendments to present the claims, but then one of the amendments was to keep the claim about not calling Ms. Andrews and drop the affidavit from Ms. Andrews. And under People v. Enos, just black letter law, it's as though he didn't keep that claim at all. So I think that's one of the problems with the way the state is trying to look at the no prejudice aspect is that post-conviction counsel didn't drop the affidavits to these witnesses. Counsel kept that claim in the amended petition and argued that there was off-record support before the hearing court, but then didn't keep any of the support, including the support that we knew was already available because of the pro se petition. And I think that's what – if counsel didn't understand that those affidavits had to be found and attached at the second stage, then it doesn't matter how much they were communicating about the petition because there was a legal question that got in the way of counsel's ability to properly represent the petition at the second stage. Now, counsel points out that reasonable assistance requires less than strickland performance and points to People v. Cotto, but I think it's important that reasonable assistance is less than strickland, but I think the way the state is trying to apply prejudice in this case does run straight into Suarez. And in Cotto, the issue was whether private counsel owes reasonable assistance specifically for the timeliness issue. And the court said yes, and then incidentally, in that particular case, the court found that counsel had made amendments to revoke timeliness, and, in fact, the trial court had not kicked out the petition on timeliness grounds. Now, as to this idea that you don't need to reach Suarez because there was a certificate raises a rebuttable presumption. So once that presumption has been rebutted, I think then we get back into Suarez territory where the rationale behind Suarez is if we can't say for certain that post-conviction counsel has understood and applied these three duties, then we're not going to dig deeper into the case for prejudice. We're going to go and just make sure that counsel does, in fact, give those duties. And importantly, the duty we're talking about in this is the duty to shape the case into legally proper form. It's the third duty. And here we have counsel keeping the claim that trial counsel is ineffective for not investigating and putting forward testimony from these witnesses, but then specifically not including the affidavit from one of the named witnesses, which had the very facts counsel was putting forward in the amended petition. And I think there you see that there's some sort of problem in what counsel thinks that duty is at the second stage. And I think he explains it at the hearing when he says we need an evidentiary hearing to explore these off-record facts when he needed to do it at that second stage or at least move that affidavit from the pro se petition to the amended petition. If there are no questions. Questions? If there are no questions, we'll take the matter under review and issue legislation in due course.